### HALPERN v. LANGROCK BROS. CO.

(Kings County Court. February 16, 1915.)

1. CONTRACTS &#10151;10—CONTRACT OF EMPLOYMENT—MUTUALITY.

A contract provided that in consideration of defendant engaging plaintiff in its manufacturing company at stipulated salary, beginning August 29, 1912, and ending February 29, 1916, plaintiff agreed to faithfully perform his duties, etc. The agreement further declared that, if plaintiff remained in defendant's employ for a period of three years, he should be paid $2 for each week he had been employed. Defendant refused to allow plaintiff to enter into the discharge of his duties. *Held* that, in view of the fact defendant admitted plaintiff was entitled to one week's salary, the contract was not void for want of mutuality, and might be enforced by plaintiff.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. &#10151;10.]

---

&#10151;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MASTER AND SERVANT ⬦⊃8—CONTRACT OF EMPLOYMENT—CONSTRUCTION.

The contract, though using the term "from week to week" with reference to the hiring, was one for the period of 3½ years.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 8–10, 17; Dec. Dig. ⬦⊃8.]

3. CONTRACTS ⬦⊃147—CONSTRUCTION.

In construing a contract, the intent of the parties must be determined from the language of the instrument.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. ⬦⊃147.]

4. MASTER AND SERVANT ⬦⊃8—RIGHTS OF SERVANT.

Unless a definite period of service is specified, a contract of hiring is one at will.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 8–10, 17; Dec. Dig. ⬦⊃8.]

5. CONTRACTS ⬦⊃155—CONSTRUCTION.

Where a contract was drawn by defendant, it should be given the construction most favorable to plaintiff.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 736; Dec. Dig. ⬦⊃155.]

6. CONTRACTS ⬦⊃155—CONSTRUCTION.

In construing a contract prepared by defendants, the court should consider what defendant must have known plaintiff would understand by it, although plaintiff's remark as to the effect of the contract cannot govern.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 736; Dec. Dig. ⬦⊃155.]

Action by Emanuel Halpern against the Langrock Bros. Company. Judgment for plaintiff.

Louis Plechett, of Brooklyn, for plaintiff.
M. Carl Devine, of New York City, for defendant.

ROY, J. Plaintiff brings this action for breach of the following contract entered into between him and defendant:

"In consideration of Langrock Bros. Company engaging me in their manufacturing establishment from week to week on a salary of $15 for the first six (6) months, starting August 29, 1912, to February 29, 1913; $16.00 for the second six months, starting February 29, 1913; $17.00 from August 29 to February 29, 1914; $18.00 from February 29 to August 29; $19.00 from August 29 to February 29, 1915; $20.00 from February 29 to August 29; $21.00 from August 29 to February 29, 1916:

"(1) I hereby agree to comply in every detail with the following requirements:

"(2) I will faithfully perform the duties for which I am engaged and will not take out, keep, or remove from the place of business of Langrock Bros. Company any tools, instruments, or materials and designs whatsoever belonging to Langrock Bros. Company.

"(3) I will not do any outside work within the factory of Langrock Bros. Company except by their direction.

"(4) That if I know or receive information from any employés of Langrock Bros. Company, or any person whatsoever, that he or they are about to do anything that will injure the business of Langrock Bros. Company, I will immediately report same to the office of the firm of Langrock Bros. Company.

"(5) That I will not make use of any instrument or materials whatsoever belonging to Langrock Bros. Company for any purposes whatsoever than for the business of Langrock Bros. Company, and that I will immediately report

⬦⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to the offices of the said firm any person or employé who is about to make use of any such material or instruments for any purposes other than that of the business of said firm.

"(6) It is agreed and understood between Langrock Bros. Company and myself, should I remain in their employ for a period of three (3) years from the above-mentioned date and faithfully carry out all the above requirements, I shall be paid by Langrock Bros. Company $2.00 for each week that I have been employed during the period of said three (3) years. The said three years are to expire from the above-mentioned date.

"[Signed]    Langrock Bros. Company.<br>
"L. L. Landrock.<br>
"Emanuel Halpern.

"Date July 23, 1912."

The plaintiff was an engraver, and was in defendant's employ when the contract was made. The defendant did not permit the plaintiff to commence his employment under the contract. The plaintiff offered his services, but was told by defendant's president that he was not needed any more. The plaintiff called the defendant's attention to the contract, and the president answered that he did not care for the contract. The plaintiff obtained other work, and earned about $800 up to the time of the trial. The defendant concedes the making of the contract and offered judgment for $15, one week's wages. It further appears that the contract in question was prepared by the president of the defendant and signed at the defendant's place of business. The plaintiff also testified that at the time of the signing of the contract he had a talk with the president of the defendant and was told by the president that he (the plaintiff) was hired for a period of 3½ years for the reason that, being a foreigner and not accustomed to work as they do it in New York, the defendant wanted to secure his services so that he would not leave as soon as he learned the defendant's method of doing business. The defendant by its answer admits that it executed the above contract, but claims, first, that the contract is unilateral, and therefore not binding upon either party; and, second, that if binding at all it provides only for a hiring at will or from week to week. These two questions constitute the principal questions in the case and will be considered in the order named.

[1] In view of the defendant's offer that the plaintiff have judgment for one week's salary under the contract, it is difficult to understand how the defendant can support its claim that the contract is unenforceable (irrespective of the period), because, since the plaintiff was not permitted to even commence his employment, the defense that the contract is unenforceable, because unilateral, applies equally to plaintiff's claim to one week's salary as to his claim to 3½ years' salary. I am not willing, however, to dispose of defendant's claim entirely upon its admission and concession. I think it sufficiently appears from the above paper that there was an agreement between the parties. The subject of mutuality of contracts, so far as actions at law are concerned, and the subject of unilateral contracts, has been discussed at length by the Court of Appeals recently in the case of Grossman v. Schenker, 206 N. Y. 466, 100 N. E. 39. I quote some of the pertinent passages:

"A contract includes not only what the parties said, but also what is necessarily to be implied from what they said." "What is implied in an express

contract is as much a part of it as what is expressed." "A mutual agreement implies an offer and acceptance, or a promise for a promise in some form, and if, as alleged, it was 'mutually agreed * * * that the defendants would pay to the plaintiff the sum of $500 for such superintendence,' necessarily there was not only an express promise by the defendant to pay, but also an implied promise by the plaintiff to superintend."

The same subject was considered in Moran v. Standard Oil Co., 211 N. Y. 187, at page 199, 105 N. E. 217, at page 220, the court said:

"There may be a promise to serve without a promise to employ, but there can be no 'agreement' for service without mutuality of rights and duties."

We find words of agreement in paragraphs first and sixth of the instrument in the case at bar. In paragraph sixth, by reference to the "above requirements" and the "above-mentioned date," I think a promise on the part of defendant to pay the consideration mentioned in the first part of the instrument can be inferred or implied. Certainly the paper in question is at least an offer on the part of the plaintiff to work for the defendant for a certain term at a certain consideration, and I. think the acceptance by the defendant of the plaintiff's offer is clearly indicated by the signature of the defendant to the paper. This also makes an agreement.

[2] The next question is, For how long a term did the parties agree that the plaintiff should be hired? It can hardly be claimed that the agreement is clear on this point. There is very little in the surrounding circumstances and the situation of the parties to throw light upon the question, except the fact that the contract was prepared by the defendant and that when the contract was signed the plaintiff was told by the defendant's president that he (plaintiff) had a contract for 3½ years. Of course, the intention of the parties must be determined from the language which they employed in the agreement. The meaning of the agreement is not at once apparent, and so assistance must be obtained from the rules of law which are designed to guide us in these circumstances. These rules are well settled, and the only difficulty is in applying them:

"In this state the rule is settled that, unless a definite period of service is specified in the contract, the hiring is at will, and the master has the right to discharge and the servant to leave at any time." Watson v. Gugino, 204 N. Y. 535, 98 N. E. 18, 39 L. R. A. (N. S.) 1090, Ann. Cas. 1913D, 215.

"The fact that the compensation is measured at so much a day, month, or year does not necessarily make such hiring a hiring for a day, month, or year, but that in all such cases the contract may be put an end to by either party at any time, unless the time is fixed." Martin v. N. Y. Life Ins. Co., 148 N. Y. 117, 42 N. E. 416.

[3, 4] It is also a fundamental rule that, if possible, effect should be given to all the language employed in an agreement. It is difficult to understand why, if the contract in question was only a hiring for a week, the obligations of the plaintiff had to be set out in such detail. Again, if it were a weekly hiring, or a hiring at will, why were seven periods of 6 months each provided for in the agreement? Why, when the compensation was fixed at $21 for the last period of 6 months, did the agreement not say, "$21 from August 29 to February 29, 1916, and thereafter." Further, why was the extra compensation

of $2 a week carefully limited to 3·years of the period of 3½ years, unless it was for the purpose of clearly indicating that the extra compensation of $2 should not be paid for the last 6 months of the term? Literally the words mean that the salary was only $15 for the first 6 months and not $15 a week; but the defendant, by its offer of judgment of $15 for one week's salary, has conceded that this is not the meaning of the language or the intention of the parties. In Mason v. N. Y. Produce Exchange, 127 App. Div. 282, 111 N. Y. Supp. 163 (affirmed in Court of Appeals, 196 N. Y. 548, 89 N. E. 1104), the plaintiff was appointed chief engineer "at a salary of $2,500 for the first year, and, if your services prove satisfactory to the authorities of the exchange, your remuneration for the second year and thereafter will be $3,000 per annum." It was decided that the words "your remuneration will be $3,000 for the first year" was· equivalent to "your remuneration will be $3,000 for one year" and that the contract was a yearly hiring. So, in the case at bar, if the contract had read "in consideration of the defendant engaging me in their manufacturing establishment on a salary of $60 for the first 6 months," the case would be directly within the authority of Mason v. N. Y. Produce Exchange. The precise question, it seems to me, is whether (without making a new agreement from the parties) we can substitute for the language "from week to week on a salary of $15 for the first 6 months" the language "on a salary of $60 for the first 6 months," or "on a weekly salary of $15 for the first 6 months."

[5, 6] I have already referred to the two circumstances outside of the written agreement which I think should be considered in arriving at the construction of this contract, namely, the fact that it was prepared by the defendant and the statements made to the plaintiff by the defendant when the contract was signed. Similar circumstances were considered of importance by the court in construing the contract in the case of Moran v. Standard Oil Co., mentioned above. At page 196 of 211 N. Y., at page 220 of 105 N. E., the court said:

"The contract was drawn by the defendant's lawyers, and was tendered to the plaintiff with the assurance, as he says, that his future for the next five years would be secure. Since the language is the defendant's, we must construe it, if its meaning is doubtful, most favorably to the plaintiff. * * * We must also give its words the meaning which the defendant ought reasonably to have understood that the plaintiff would put upon them."

Of course, I do not let the testimony of the plaintiff concerning what was told him when the contract was signed make the contract for the parties. The rule above mentioned by the Court of Appeals does not allow or mean any such thing. Before the rule can be applied, the terms of the promise must admit of more senses than one. See 2 Parsons on Contracts (7th Ed.) p. 629, note P. I am of opinion that full effect can be given to the words "from week to week" by deciding that they refer to and define the compensation.

Therefore the plaintiff is entitled to judgment for $15 a week for the 3½ years, less the $800 which he earned during that time. Milage v. Woodward, 186 N. Y. 252, 78 N. E. 873.